**Abdela TUM, et al., Plaintiffs, Appellants,**

v.

**BARBER FOODS, INC., d/b/a Barber Foods, Defendant, Appellee.**

Nos. 02–1679, 02–1739.

United States Court of Appeals, First Circuit.

Heard Jan. 10, 2003.

Decided March 10, 2004.

---

Lori B. Kisch, with whom Timothy B. Fleming, Charles R. Dixon, Gordon, Silberman, Wiggins & Childs, P.C., and William C. Nugent were on brief, for appellants.

Graydon G. Stevens, with whom Kelly, Remmel & Zimmerman, were on brief, for appellee.

Before BOUDIN, Chief Judge, TORRUELLA and LYNCH, Circuit Judges.

TORRUELLA, Circuit Judge.

Plaintiffs-appellants are a group of hourly wage employees ("Employees") who brought suit against their employer, Barber Foods, for alleged violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b). Employees sought compensation for alleged unrecorded and uncompensated work performed by them for Barber Foods.

The district court granted partial summary judgment for the defendant. A trial was held on the issue of whether the time spent donning and doffing required clothing constituted "work" and whether such time was de minimis. The jury found for the defendant. Employees appeal from the grant of summary judgment, and from the district court's decision and they challenge two of the district court's jury instructions. Barber Foods cross-appeals, arguing that the district court erred in ruling that the donning and doffing of required clothing and equipment is an integral part of the Employees' work for Barber Foods and is not excluded from compensation under the Portal–to–Portal Act as preliminary or postliminary activity.

After initial review by the panel, we affirmed. *Tum v. Barber Foods, Inc.*, 331 F.3d 1 (1st Cir.2003). Plaintiffs filed a petition for rehearing, after which we received an amicus brief from the Secretary of Labor ("the Secretary").[1] Having considered the arguments, we now grant rehearing but affirm.

## I. *Background*

Located in Portland, Maine, Barber Foods is a secondary processor of poultry-based products. It purchases boneless chicken breast in bulk and processes that raw material into finished products such as stuffed entrees, chicken fingers, and nuggets. Barber Foods has two shifts, each with six production lines, consisting of three "specialty" lines and three "pack-out" lines. The product is assembled on the specialty lines, and then, after passing through large spiral freezers, the product is pouched, packed, and palletized on the pack-out lines.

---

1. In addition, the Secretary has filed two letters pursuant to Fed. R.App. P. 28(j).

The production lines are staffed primarily by rotating associates, employees who generally rotate to different positions on the lines every two hours. In addition to rotating associates, Barber Foods employs set-up operators whose primary duty is to ensure that various machines on the lines are operating properly, meatroom associates who work where the raw product is blended with ingredients, shipping and receiving associates, maintenance employees, and sanitation employees.

All associates are expected to be on the production floor ready to work when their shift begins. They are paid from the time they actually punch in to a computerized time-keeping system from time clocks located at the entrances to the production floor.

## A. *Equipment*

Rotating associates are required to wear lab coats, hairnets, earplugs, and safety glasses. The lab coats, hairnets, and earplugs must be on before they can punch in and until they punch out. Safety glasses and any items that they choose but are not required to wear, such as gloves, aprons, and sleeve covers, can be donned after punching in and doffed before punching out.

Before they punch in, set-up operators are required to wear lab coats, hairnets, earplugs, safety glasses, steel-toed boots, bump hats and back belts and are required to carry lock-out/tag-out equipment, which they put in their lab coat pocket. Any other items they choose to wear may be donned after punching in.

Meatroom associates are required to wear lab coats, hairnets, earplugs, safety glasses, steel-toed boots, back belts, aprons, and vinyl gloves. Many also choose to wear sleeve covers. All items must be on before punch in, except the apron, gloves, and sleeve covers, which can be donned after punching in and doffed before punching out.

Shipping and receiving associates are required to wear steel-toed boots, hard hats, and back belts. They generally don these items before punching in and doff them after punching out. Their time clock is located on the production floor, so they must also don and doff lab coats, hairnets, and earplugs in order to enter the production floor to punch in and out.

Employees obtain lab coats and cotton glove liners from the hallway between the entranceway and the equipment cage. The lab coats are on hanger racks, and the glove liners are in tubs. Hairnets, earplugs, vinyl gloves, sleeve covers, and aprons are dispensed from the window of the equipment cage. Vinyl gloves, sleeve covers, and aprons are also available from tubs on the production floor.

Bump hats, back belts, safety glasses, steel-toed boots, and reusable earplugs are dispensed once and then replaced as needed. Items retained by associates may be stored in their locker or taken home. Lab coats and gloves are laundered and reused; on their way out of the plant, associates drop these items in laundry bins located at several points along the hallway from the production floor exits to the plant exits. Vinyl gloves, sleeve covers, and aprons are disposed of in trash bins located on the production floor and along the hallways from the production floor exits to the plant exits.

Employees may have to wait to obtain and dispense with clothing and equipment. At busier times, there may be lines at the coat racks, glove liner bins, and cage window. There may also be lines at the time clocks.

## B. *Time Keeping*

Barber Foods uses a computerized time-keeping system. The system downloads

clock punches into the payroll software. Time clocks are located at the entrances and exits to the production floor and at various other locations in the facility. Each employee has a swipe card with a bar code, which she swipes through the time clock. Rotating associates, set-up operators, and meatroom employees generally punch in at a clock in the area where they will be working and punch out on the clocks located next to the two primary exits. Maintenance employees punch in on a time clock in the maintenance room. Shipping-and-receiving employees punch in and out on the plant office clock located by the shipping-and-receiving office. Sanitation associates punch in on the cafeteria clock and punch out at the plant office clock.

Employees get paid from the moment they punch in. In an attempt to stagger check-in times, Barber Foods allows Employees twelve minutes of "swing time," meaning that Employees can punch in up to six minutes early and get paid for that additional time or punch in up to six minutes late and not be charged with an attendance violation.

### C. *History of Dispute*

Seven current employees and thirty-seven former employees brought suit in district court claiming that Barber Foods violated the FLSA by forcing its hourly employees to work "off the clock" by not paying Employees for the time it takes to obtain, don, and doff their gear. Although the district court granted summary judgment for the defendants as to most counts, the court denied summary judgment as to the claim involving the donning and doffing of required clothing

and equipment. The court found that the donning and doffing of clothing and equipment required by Barber Foods or by government regulation is an integral part of Plaintiffs' employment. This finding removed the donning and doffing of required gear from the Portal–to–Portal Act and its exclusion of compensability for preliminary or postliminary activity. 29 C.F.R. § 790.8. A trial was held on the issue of whether the time spent donning and doffing required clothing was de minimis and thus did not constitute work under the FLSA.

The jury found that the combined donning and doffing times are 1 minute for rotating associates, 2 minutes 16 seconds for set-up operators, 1 minute 53 seconds for meatroom associates, 2 minutes 8 seconds for shipping and receiving associates, and no time for maintenance and sanitation workers because they are not required to don clothing before punching in or to doff clothing after punching out. The jury found that each of these donning and doffing times is de minimis, making the donning and doffing time non-compensable. Employees do not challenge the jury's findings.

Employees appeal the following findings in the partial summary judgment decision: (1) that the time employees must necessarily spend walking and waiting in connection with obtaining, donning, doffing, and disposing of the sanitary and protective gear required by Barber Foods and/or federal regulation is not compensable; (2) that the time spent donning and doffing clothing, equipment, and gear which is not expressly required by Barber Foods is non-compensable.[2] In addition, Employ-

---

**2.** In their brief, Employees argue that the district court erred in finding that Employees failed to raise in their Complaint or in their Opposition to Summary Judgment a claim that they are entitled to compensation for Employees' activities after punching out on the time clocks. Because we find that it is at

ees challenge two district court jury instructions.[3]

## II. *Standard of Review*

■ We review summary judgment decisions de novo. *Kauch v. Dep't for Children, Youth and Their Families*, 321 F.3d 1, 3–4 (1st Cir.2003). Construing the facts in the light most favorable to the nonmoving party, our role is to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. *Discussion*

■ The FLSA requires an employer to record, credit, and compensate employees for all of the time which the employer requires or permits employees to work, 29 U.S.C. § 201, *et seq.*, commonly defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944); *see also Reich v. New York City Transit Auth.*, 45 F.3d 646, 649 (2d Cir. 1995).

■ However, even when an activity is properly classified as "work," the Portal–to–Portal Act, 29 U.S.C. § 254, exempts from compensation activities which are preliminary or postliminary to an employee's principal activity or activities unless they are an "integral and indispensable part of the principal activities for which

covered work[ers] are employed and not specifically excluded by section 4(a)(1) [of the Portal–to–Portal Act]." *Lindow v. United States*, 738 F.2d 1057, 1060 (9th Cir.1984) (citation and quotations marks omitted); *Reich*, 45 F.3d at 649. In addition, some activities that may qualify as "work" and fall outside of the Portal–to–Portal Act nevertheless do not require compensation because the activities require such little time that they are adjudged de minimis. *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir.1976).

### A. *Donning and Doffing of Gear*

■ The district court found that the donning and doffing of required gear is an integral and indispensable part of Employees' principal activities. *See generally Steiner v. Mitchell*, 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956) (holding that activities should be considered integral and indispensable when they are part of the principal activities for the particular job tasks); *Mitchell v. King Packing Co.*, 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (1956). We agree with the district court's conclusion as to the required gear. In the context of this case, Employees are required by Barber Foods and or government regulation to wear the gear. Therefore, these tasks are integral to the principal activity and therefore compensable. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 903 (9th Cir.2003) (holding that donning and doffing which is both required by law and done for the benefit of employer is integral and indispensable part of the workday); *cf.* 29 C.F.R. § 1910.132(a).

least arguable that the issue was raised below, we address it on the merits.

**3.** In their Statement of Issues, Employees contend that they appeal from the district court's finding that Barber Foods is entitled to summary judgment on the issue of whether time spent by maintenance and shipping and

receiving employees is de minimis. However, they have waived their right to appeal by failing to make an attempt at developed argumentation. *Twomey v. Delta Airlines Pilots Pension Plan*, 328 F.3d 27, 33 n. 4 (1st Cir. 2003).

As relates to the non-required gear, Employees contend that any activity which promotes safety and sanitary conditions necessarily benefits the employer. We think this takes the argument too far. The donning and doffing of non-required gear is not compensable under these facts. Not everything an employee does in her workplace is compensable under the FLSA. These optional items required are neither by the employer nor by the regulations and are worn by Employees at their own discretion.

## B. *Walking Time*

■ Employees argue that the district court improperly excluded from compensable time the periods Employees walk from one area where they obtain an initial piece of clothing or equipment (required by Barber Foods and/or USDA regulations) to another area where they obtain additional items, the period they spend walking from getting their garb to the time clocks, and the period they spend walking to the area where they dispose of clothing and equipment after they punch out.

The Portal–to–Portal Act specifically addresses walking time, generally exempting from compensation "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a)(1). The Act also generally exempts from compensation activities which are preliminary or postliminary to an employee's principal activity or activities. See 29 U.S.C. § 254(a)(2). On their face, these provisions would appear to exempt from compensation the walking at issue here.

Employees argue that the Portal–to–Portal Act excludes only that walking time which occurs before an employee commences her principal activity or activities. *See* 29 U.S.C. § 254(a)(1)-(2). The Code of Federal Regulations ("Code") states that Congress intended the term "principal activities" to be broad. 29 C.F.R. § 790.8(a) (2002). However, the Code regulations state that just because the changing of clothes may in "certain situations be so directly related to the specific work the employee is employed to perform that it would be regarded as an integral part of the employee's 'principal activity[,]' [t]his does not necessarily mean, however, that travel between the washroom or clothes-changing place and the actual place of performance of the specific work the employee is employed to perform, would be excluded from the type of travel to which section 4(a) [Portal–to–Portal Act] refers." 29 C.F.R. § 790.7(g) n.49 (citing colloquy between Senators Cooper and McGrath, 93 Cong. Rec. 2297–2298) (internal citation omitted).

Compensability issues are determined under the FLSA and its accompanying regulations. Both parties agree that the Portal–to–Portal Act does not apply to questions of compensability during the "workday."[4] The Secretary urges an expansion of the ordinary "workday" rule in favor of a broader, automatic rule that any activity that satisfies the "integral and indispensable" test itself starts the workday, regardless of context. This extension overreaches and would lead to the absurd result that an employee who dons required equipment supplied by the company at

---

4. The regulations state that "[p]eriods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal[–to–Portal] Act had not been enacted. The principles for determining hours worked within the 'workday' proper will continue to be those established under the Fair Labor Standards Act without reference to the Portal Act. . . ." 29 C.F.R. § 790.6.

5:00 a.m., at his own home, starts his workday for FLSA purposes at 5:00 a.m.—even though he is not required to punch in to work and does not punch in until 8:00 a.m. This plainly cannot be what Congress intended. The Secretary offers a fallback position that the workday starts with any donning or doffing of required gear so long as it is done on company property. But the logic of the Secretary's position does not permit such a narrowing, nor does the Secretary's fallback argument make sense in a world, for example, in which not all employees who perform work that is compensable under the FLSA do so at a facility owned and run by their employer.

Further, nothing in *Steiner* requires the result that the Secretary urges,[5] and the Secretary's rule threatens to undermine Congress's purpose in the Portal–to–Portal Act, which (with rare exceptions) sought to exclude preliminary and postliminary waiting and walking time from compensability. Not surprisingly, the Secretary's broad position has implicitly been rejected by two circuits. *See Anderson v. Pilgrim's Pride Corp.*, 147 F.Supp.2d 556, 563 n. 12 (E.D.Tex.2001), *aff'd*, 44 Fed.Appx. 652, 2002 WL 1396949 (5th Cir.2002); *Reich v. IBP, Inc.*, 38 F.3d 1123, 1127 (10th Cir. 1994). *But see Alvarez*, 339 F.3d at 906–07.

The Secretary's position is one taken in litigation, in response to an invitation from this court. The Secretary has no authority to promulgate legislative rules in this area. The Secretary has promulgated interpretive regulations, which are entitled to some weight, *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but those regulations appear to cut both ways on the facts of this case. In any event, the Secretary's present litigation position, in our view, pushes so far that it threatens to undermine the Portal–to–Portal Act. We affirm the determination that the employees' walking time is not compensable.

## C. *Waiting Time*

■ Employees claim that Barber Foods must compensate them for all the time they spend waiting in line to receive the required clothing or equipment and to punch in at the time clocks.

Whether waiting time is compensable under the FLSA depends on whether an employee is "waiting to be engaged" or "engaged to wait." *See generally Skidmore*, 323 U.S. at 136–37, 65 S.Ct. 161. Idle time may be considered work under the FLSA where it is controlled by the employer and the time spent is dominated by the need to serve the employer's needs. *See Armour & Co. v. Wantock*, 323 U.S. 126, 133–34, 65 S.Ct. 165, 89 L.Ed. 118 (1944). The regulations elaborate on this principle by stating that an employee is engaged to wait, i.e., working, when "the employee is unable to use the time effectively for his own purposes. It belongs to and is controlled by the employer." *See* 29 C.F.R. § 785.15 (citations omitted). The Secretary argues that the waiting time spent by the Employees is integral to their principal activities, and compensable under the FLSA.

First, Employees argue that they should be compensated for time spent waiting to punch in at the time clocks. Waiting in line to punch in at the time clock is explicitly excluded from compensable activity by 29 C.F.R. § 790.8(c).[6] There is no indica-

---

**5.** *Steiner* concerned only time spent in the donning and doffing of special protective equipment and in required protective showers. *Steiner* did not purport to say that all time walking to where that equipment is stored, waiting to retrieve and return it, and then walking to the time clock is compensable.

**6.** "[A]ctivities such as checking in and out and waiting in line to do so would not ordi-

tion that any of the time spent waiting is controlled by the employer. Employees have adduced no evidence to counter that conclusion.

Second, we turn to the waiting time associated with donning and doffing of clothes. Even if we were to find that the employees were engaged to wait under the FLSA and its accompanying regulations, the waiting time would qualify as preliminary or postliminary activity under the Portal–to–Portal Act. "Wait time is compensable when it is part of a principal activity, but not if it is preliminary or postliminary activity." *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir.1994). When we look at 29 C.F.R. § 790.8, we find that while the Code does not explicitly address the type of waiting time at issue, the Code indicates that a reasonable amount of waiting time is intended to be preliminary or postliminary. By making compensable some activities that are not traditionally thought of as primary activities, such as a logger carrying heavy equipment out to the logging site and a butcher sharpening knives, the Code was compensating workers for activities that are so integral to a principal activity that they cannot be separated from that activity. However, by excluding walking with ordinary equipment and carrying light equipment, the Code indicates that a line must be drawn, otherwise an almost endless number of activities that precipitate the employees' essential tasks would be compensable. We find that a short amount of time spent waiting in line for gear is the type of activity that the Portal–to–Portal Act excludes from compensation as preliminary.

### D. *Barber Foods' Cross–Appeal*

 Although Barber Foods ultimately prevailed on all counts, it appeals the

narily be regarded as integral parts of the principal activity or activities." 29 C.F.R.

district court's finding that the donning and doffing of Employees' required clothing and equipment is an integral part of the Employees' work at Barber Foods. "As a general rule, a party may not appeal from a favorable judgment simply to obtain review of findings it deems erroneous." *Mathias v. Worldcom Techs., Inc.*, 535 U.S. 682, 684, 122 S.Ct. 1780, 152 L.Ed.2d 911 (2002) (per curiam).

If we were to do as Barber Foods asks and reverse the challenged district court finding, our action would provide no tangible relief to Barber Foods; the company has already received all requested relief. *See New York Tel. Co. v. Maltbie*, 291 U.S. 645, 54 S.Ct. 443, 78 L.Ed. 1041 (1934).

### E. *Jury Instructions*

 Employees challenge two jury instructions, which "[w]e examine ... to determine whether they adequately explained the law or whether they tended to confuse or mislead the jury on the controlling issues." *Federico v. Order of Saint Benedict*, 64 F.3d 1, 4 (1st Cir.1995). We will reverse jury instructions only if the error was prejudicial in light of the entire record. *Id.* at 3. "An erroneous jury instruction necessitates a new trial only if the error could have affected the result of the jury's deliberations." *Allen v. Chance Mfg. Co.*, 873 F.2d 465, 469 (1st Cir.1989).

 The first challenged jury instruction states the following:

> I instruct you that any time spent walking between the time clock and a bin or locker is not compensable. . . . It is only the time spent actually putting on or taking off the item and placing it in a bin or locker which you must determine.

After the trial judge gave the instruction, Employees' counsel objected, arguing that

§ 790.8.

the jurors might believe that they are not to compensate an employee if she is walking while donning or doffing.

We find no error in this instruction. When we look at the instructions in their entirety, we find that the jurors were clearly apprised of their duty, and that the instruction would not have confused or misled the jury about the controlling issues.[7]

 The second challenge is also without foundation. The challenged instruction states:

Now, I instructed you to don an item of clothing, for legal purposes, means to obtain and put that item on. To doff an item of clothing or equipment for these purposes means to take it off and place it in a bin or locker.

Employees contend that the judge incorrectly defined donning only in terms of clothing and should have included equipment and that the jury could mistakenly conclude that taking an item out of a bin or locker is not compensable.

The trial judge's instruction contained no error. The instruction adequately illuminated the applicable law by stating that donning includes obtaining the item. Consequently, we find that the instruction did not confuse or mislead the jury.

## IV. *Conclusion*

For the reasons stated above, we affirm the district court judgment.

*Affirmed.*

---

7. The instruction went on to clarify the jury's duty:

In deciding how much time it takes an associate to don and doff required clothing and equipment, you are not to decide the actual time it may take any individual employee or associate to perform those activities, rather you must decide the amount of time that you think is reasonably required by a reasonably diligent associate or em-

BOUDIN, Chief Judge (concurring).

The central issue in this case is whether walking and waiting time, incident to the donning and doffing of required clothes and equipment, are compensable where (according to findings in the district court) the time spent in donning and doffing is minimal but the combined walking and waiting time may be extensive. There may be no "right" answer short of the Supreme Court's reading of its own precedents, but the problem can at least be understood if the history and underlying tensions are candidly arrayed.

The original Fair Labor Standards Act made compensable time spent in "work," but it defined the concept only in the most general terms without providing the Secretary of Labor with power to make legislative-type rules defining what constituted "work." This left many problems to be solved piecemeal by litigation. One had to do with traveling within the job site before the main activity commenced; another, with the donning of special gear. A classic example is the miner's travel and descent from the mine portal to the working face.

Against the background of the New Deal (and the war), it was not hard for the Supreme Court to conclude that subterranean travel through dark and dangerous tunnels, undertaken for the mine owner's benefit, was work.[8] Shortly thereafter, the Supreme Court extended the reasoning in the mine-worker cases to conclude

---

ployee to don and doff the required clothing and equipment.

8. *See Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers,* 325 U.S. 161, 163–66, 65 S.Ct. 1063, 89 L.Ed. 1534 (1945); *Tennessee Coal, Iron. & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598–99, 64 S.Ct. 698, 88 L.Ed. 949 (1944).

that time spent by employees of a medium-sized pottery factory in walking from time clock to work bench, and in making preliminary preparations such as donning and doffing specialized clothing, was work just as much as the actual productive activity that followed. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 691–93, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

These holdings contradicted actual. pay practice within the industries and created large overhanging liabilities for employers. To the extent that workers received more than the minimum wage, the decisions also upset underlying bargains. A flood of lawsuits followed. Congress responded with the Portal-to-Portal Act to cut off these claims for the past and to provide in the future (with exceptions not here relevant) that compensation was not required for:

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. . . .

29 U.S.C. § 254(a) (2000).

A decade later, this new legislative balance was reset (and perhaps upset) in a small way by a new Supreme Court decision. In *Steiner v. Mitchell,* 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956), the Justices held that the Portal-to-Portal Act did not cover the time spent donning and doffing of special clothing and time spent showering, in facilities required by state law, to protect workers dealing with dangerously caustic and toxic materials. And, since the Portal-to-Portal Act did not apply, the time was to be treated as compensable work under the Fair Labor Standards Act.

*Steiner* was an understandable reaction—after all, the dangers were extreme and unique to the job—and the decision effectively invoked a verbal formula culled from the legislative history of the Act, 350 U.S. at 256, 76 S.Ct. 330 (concluding that pre-shift and post-shift activities are compensable if they are an "integral and indispensable" part of the principal activity); but the tension with the Portal-to-Portal Act's underlying policy has been less easy to escape as *Steiner* has been extended.

One such extension by the lower courts embraced protective clothing necessitated by less extreme health or safety concerns, although the precedents are not uniform.[9] However, the more serious problem for employers arises in cases such as this one by attempts to extend *Steiner* further to walking and waiting incident to such donning and doffing. This course may greatly extend the amount of time in question and may seem especially incongruous where the amount of time spent in actually donning and doffing clothes and equipment is generally pretty minimal.

The Secretary defends such an extension by combining *Steiner*'s verbal formula—"integral and indispensable"—with another settled principle: that once the workday has begun with the first principal

9. *Compare, e.g., Alvarez v. IBP, Inc.,* 339 F.3d 894, 903 (9th Cir.2003) (extending *Steiner* to such items as sanitary aprons) *with e.g., Reich v. IBP, Inc.,* 38 F.3d 1123, 1126 (10th Cir. 1994) (holding that the donning and doffing of sanitary outergarments, although required, was not integral and indispensable); *Anderson v. Pilgrim's Pride Corp.,* 147 F.Supp.2d 556, 563 (E.D.Tex.2001)(same), *aff'd,* 44 Fed.Appx. 652 (5th Cir.2002).

activity, anything else until the workday ends is compensable unless the employee is essentially on his own (*e.g.*, lunch breaks). On this theory, a worker who picks up and puts on a required helmet at the plant entrance—an activity integral to a principal activity under *Steiner* (as extended by lower courts)—then must be compensated for everything else that happens (*e.g.*, walking and waiting to pick up more equipment, walking to the time clock at the production floor entrance, waiting to punch in).

Yet, thus extended, the tension with the Portal–to–Portal Act becomes acute: after all, why is this complex of donning, doffing, waiting and travel within the Barber plant very different from the preliminary activities which were involved in the *Mt. Clemens* case—one of the targets of the Portal–to–Portal Act. Further, the legislative history and the Secretary's own regulations give examples of events excluded from compensable work—such as time spent waiting to punch in and time spent walking from plant gate to work bench—that appear at odds with her position in this case. *See* S.Rep. No. 80–48, at 47 (1947); 29 C.F.R. § 790.7.

The Secretary answers, in effect, that those examples assumed that no required helmet was donned at the entrance—but should this really convert everything after into compensable work when it would not otherwise be? In any event, the Secretary can cite a favorable result in the Ninth Circuit, *see Alvarez*, 339 F.3d at 906–07; but the Fifth and Tenth Circuits, addressing variants on this theme, have resisted the Secretary's result, although not for the same reasons.[10]

One further basis for resisting the Secretary derives from yet another principle

from the Supreme Court, namely, that under certain circumstances time spent on a de minimis activity that is not the main activity of the worker should be disregarded. *See Mt. Clemens*, 328 U.S. at 692–93, 66 S.Ct. 1187. If the time spent donning and doffing is de minimis, can it also not be disregarded as starting the workday and allow courts to disregard the associated walking and waiting? Such a result is not on its face at odds with *Steiner* where the donning and doffing and showering were not claimed to be de minimis.

The Secretary replies that the de minimis concept has nothing to do with when the workday begins or ends but the de minimis concept is much fuzzier than the Secretary lets on: in the Supreme Court case that spawned it, the Court stated broadly that "compensable working time is involved" only "when an employee is required to give up a substantial measure of his time and effort." *Mt. Clemens*, 328 U.S. at 692, 66 S.Ct. 1187. So one *could* say that a de minimis activity which is non-compensable time under *Mt. Clemens* does not start of the workday, at least when preliminary to arrival "on the factory floor."

Thus, two positions are juxtaposed. One is the Secretary's mechanical combination of *Steiner* with a rigid "everything after is work" principle. The other is to treat required donning and doffing as compensable where more than de minimis but, where it is not, leaving both it *and* any associated walking and waiting time as non-compensable. Neither outcome is impossible analytically and neither is clearly dictated by Supreme Court precedent or underlying policy.

So where does the balance of advantage lie? Admittedly, the donning, doffing,

---

**10.** *Anderson,* 147 F.Supp.2d at 563 n. 12 (holding that "walk time" to employee's work station was not compensable), *aff'd*, 2002 WL 1396949 (5th Cir.); *Reich,* 38 F.3d at 1127 (upholding the denial of "walk and wait" time related to donning and doffing).

waiting and walking involved are in the employer's service: but that was equally true in the *Mt. Clemens* case and Congress made a policy decision against required compensation. And, while the Secretary's interpretive view (although non-binding) is entitled to some deference, *United States v. Mead Corp.*, 533 U.S. 218, 228, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), it is recent and offered only in litigation: no explicit regulation mandates the Secretary's outcome and the text of 29 C.F.R. § 790.7(g) n.49 points towards excluding the walking and waiting time.

On Barber's side, as already noted, the history and language of the Portal–to–Portal Act tend to favor Barber, as do two of the three circuit decisions; the question is *how far Steiner* has qualified the statute. Perhaps it is enough for a lower court that the Secretary's position is, in practical effect, a substantial step beyond *Steiner*. As *Steiner* itself tempers the Portal–to–Portal Act's main thrust, probably its extension should be left to the Supreme Court.

Finally, it appears that wages at the Barber plant were set against a background practice of treating as non-compensable the donning, doffing, walking and waiting involved in this case. Unless those wages are the federal minimum, a decision that now such time is compensable will likely be offset by wage adjustments in the future, leaving only a one–time windfall for employees. It is hard to begrudge this to workers doing difficult and disagreeable work, but the situation does bear an uncanny resemblance to that which prompted the Portal–to–Portal Act. It may be time for the Supreme Court to have another look at the problem.