# United States Court of Appeals
## For the First Circuit

No. 04-2541

MASSACHUSETTS ASSET FINANCING CORPORATION,
Plaintiff, Appellant,

v.

HARTER, SECREST & EMERY, LLP,
SARDONE, ROBINSON & SCHNELL, and
MB VALUATION SERVICES, INC.,
Defendants, Appellees,

and

WANDA KINNEY-CANARY, d/b/a TRITECH APPRAISAL SERVICES,
Defendant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Robert B. Collings, U.S. Magistrate Judge]

---

Before
Boudin, Chief Judge,
Torruella and Selya, Circuit Judges.

---

Michael E. Schoeman, with whom Schoeman, Updike & Kaufman, LLP, was on brief, for appellant.
John J. O'Connor, with whom Robert T. Gill and Peabody & Arnold, LLP, were on brief, for appellee MB Valuation Services, Inc.
Goulston & Storrs, on brief for appellee Harter, Secrest & Emery, LLP.
Donovan Hatem, LLP, on brief for appellee Sardone, Robinson & Schnell.

---

December 1, 2005

---

**TORRUELLA**, **Circuit Judge**.  This case arises from a loan made by Plaintiff Massachusetts Asset Financing Corp. ("Plaintiff") to American Mold Corporation ("American Mold").  The loan was secured by American Mold's manufacturing equipment, which had been appraised at $1.1 million dollars, but eventually sold for $30,000 after American Mold defaulted on the loan and went bankrupt.  Plaintiff filed suit against American Mold's lawyers, American Mold's accountants, and two appraisal companies.  This appeal concerns Plaintiff's claim against the appraisal company MB Valuation Services, Inc. ("MB Valuation").  On August 29, 2002, the court below allowed MB Valuation's motion for summary judgment.  Mass. Asset Financing Corp. v. Harter, Secrest & Emery, LLP, 220 F. Supp. 2d 20, 25 (D. Mass. 2002).  On September 30, 2004, the court below entered an order for final judgement pursuant to Federal Rule of Civil Procedure 54(b).  For the reasons stated herein, we reverse the decision of the district court and remand the case for trial.

## I.

Plaintiff is in the business of making loans.  The loans are secured by the borrower's assets, which are appraised before the loan is made.  On numerous occasions, MB Valuation had performed appraisals for Plaintiff.  To secure the loan to American Mold, Plaintiff called Scott Creel ("Creel") at MB Valuation about appraising American Mold's equipment.  The parties disagree as to

Creel's actual involvement after this request. According to Plaintiff, Creel stated that "he could not himself perform the appraisal" but that "he would find another appraiser and would supervise and review that appraiser's work."[1] Plaintiff states that Creel then put Plaintiff in touch with an appraiser from another company, Tri-Tech Appraisal Services, and that "Creel reviewed the appraisal as he had promised and increased some specific equipment appraisal amounts and reduced others." According to MB Valuation, Creel referred Plaintiff to another appraisal company and had no further involvement in the appraisal.

The final appraisal valued American Mold's equipment at about $1.1 million. MB Valuation and Creel did not receive payment from Plaintiff or any other source for their involvement with this appraisal. Several months after the closing of the loan, American Mold defaulted on the loan and filed for bankruptcy. The equipment, which had been appraised at a value of about $1.1 million, sold for about $30,000.

Plaintiff claims damages of about $1.2 million, resulting from professional negligence on the part of MB Valuation. Significantly, Plaintiff's complaint alleged only negligence on the part of MB Valuation and did not allege gross negligence. MB Valuation moved for summary judgment. The court below granted

---

[1] The quoted language is from Plaintiff's brief and is not an actual quotation of Creel.

summary judgment because it found that the factual dispute described above was not material to the outcome of the case. The court found that because Plaintiff had never paid MB Valuation for the appraisal -- regardless of the dispute over Creel's involvement -- any act by MB Valuation was gratuitous. Under Massachusetts law, liability for a gratuitous act arises only from gross negligence. Thus, since Plaintiff alleged only negligence and not gross negligence, Plaintiff could not recover as a matter of law.

We review a district court's grant of summary judgment de novo. Tum v. Barber Foods, Inc., 360 F.3d 274, 279 (1st Cir. 2004). Since MB Valuation has moved for summary judgment, we construe the record in the light most favorable to Plaintiff. Id.

## II.

"A basic principle of negligence law is that ordinarily everyone has a duty to refrain from affirmative acts that unreasonably expose others to a risk of harm." Tobin v. Norwood Country Club, Inc., 661 N.E.2d 627, 637 (Mass. 1996). In contrast, a person generally "does not have a duty to take affirmative action." Commonwealth v. Levesque, 766 N.E.2d 50, 56 (Mass. 2002). For example, "a mere passerby who observes a fire [has no obligation] to alert authorities." Id. at 57. If, however, a person voluntarily assumes a duty, that duty must be performed with

-4-

due care. <u>Mullins</u> v. <u>Pine Manor College</u>, 449 N.E.2d 331, 336 (Mass. 1983).[2]

For a duty voluntarily undertaken, the standard of due care depends upon the nature of the action. The Supreme Judicial Court (SJC) has noted that "[j]ustice requires that the one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay." <u>Massaletti</u> v. <u>Fitzroy</u>, 118 N.E. 168, 177 (Mass. 1917). A person undertaking a nongratuitous duty, such as one for pay, has a duty to refrain from ordinary negligence. <u>Wheatley</u> v. <u>Peirce</u>, 238 N.E.2d 858, 860 (Mass. 1968). In contrast, a person undertaking a gratuitous duty must refrain only from gross negligence. <u>Id.</u> Therefore, in order to determine whether a duty of care has been breached, we must first determine whether the duty was gratuitous or not. In a number of cases, Massachusetts courts have undertaken the task of distinguishing gratuitous and nongratuitous acts. An important factor is whether there was a "social nature in the relations of the parties." <u>Beaulieu</u> v. <u>Lincoln Rides, Inc.</u>, 104 N.E.2d 417, 418 (Mass. 1952). A gratuitous act is more likely to occur when an act is of a social nature rather than a business nature. <u>See</u> <u>id.</u>

---

[2] There are exceptions, not relevant to this case, to the rule that a person has no duty to take affirmative action. <u>See</u> <u>Mullins</u>, 449 N.E.2d at 336.

The line between gratuitous and nongratuitous acts is relatively clear in the social context. In a social context, when a person does a favor for another person, whether a friend or a stranger, and receives no consideration other than "those intangible advantages arising from mere social intercourse," Comeau v. Comeau, 189 N.E. 588, 589 (Mass. 1934), the act will be gratuitous. For example, in Bagley v. Buckholder, the plaintiff and defendant were both truck drivers for different trucking companies, and plaintiff sued defendant for injuries that occurred while defendant was helping plaintiff move his truck. 149 N.E.2d 143, 144 (Mass. 1958). The court found that defendant's act was gratuitous because the evidence showed no business purpose and "no immediate advantage to the defendant of his helpful action." Id. at 146. Similarly, in a personal context, when a person offers to give another person a ride without any consideration, the act will be gratuitous.[3] See Ruel v. Langelier, 12 N.E.2d 735, 736 (Mass. 1938); Massaletti, 118 N.E. at 177; cf. Taylor v. Goldstein, 107 N.E.2d 14 (Mass. 1952) (finding the giving of a ride to be a nongratuitous act where the objective of the ride was to benefit the driver and not the passenger). Finally, when a host receives a guest "as a visitor for social purposes," the act will be gratuitous. O'Brien v. Shea, 96 N.E.2d 163, 164 (Mass. 1951).

---

[3] By statute, the standard of care owed by drivers of motor vehicles to their passengers is that of ordinary negligence. Mass. Gen. Laws ch. 231, § 85L.

In the business context, the line between gratuitous and nongratuitous acts is more difficult to discern. The dispositive question is whether the allegedly gratuitous act had a business purpose. See Onofrio v. Dept. of Mental Health, 562 N.E.2d 1341, 1346 (Mass. 1990) ("[Defendant] was furthering its own business interests . . . ."); Falden v. Crook, 172 N.E.2d 686, 688 (Mass. 1961) ("[Defendant] was doing a kind act rather than building up good will for his business."); Beaulieu v. Lincoln Rides, Inc., 104 N.E.2d 417, 418 (Mass. 1952) ("[T]here is nothing in the record to indicate that the defendant, a business corporation, undertook to give the plaintiff a pure gratuity."); Foley v. McDonald, 185 N.E. 926, 927 (Mass. 1933) ("[A] business purpose could be found in the transportation of the plaintiffs by the defendants in the course of an attempt by the defendants to sell an automobile to the plaintiffs . . . .").

For an act to have a business purpose it need only be "incidental to the [defendant's] business." Foley, 185 N.E. at 926-27. For example, when a car salesman drove a prospective buyer home, the court found that the act was incidental to the business purpose of selling automobiles and therefore nongratuitous. Id. at 926-27. In contrast, where an ice cream truck driver gave a customer a ride home, the act was not incidental to the defendant's business as the court found that the driver "was doing a kind act

rather than building up good will for his business." Falden, 172 N.E.2d at 688.

For an act to be nongratuitous, "it is only necessary for a jury to find some business advantage to the defendant." Beaulieu, 104 N.E.2d at 418. In Beaulieu, the defendant was the operator of an amusement park ride who gave free rides before 2:00 p.m. and charged for rides after 2:00 p.m. Id. at 417-18. The court found that a "jury could find that the purpose of giving free rides . . . was merely to interest customers and increase business." Id. at 418. A "conjectural future benefit," however, will not establish an otherwise nonexistent business purpose. Bagley, 149 N.E.2d at 146. In Bagley, the plaintiff truck driver argued that the defendant truck driver's assistance was not gratuitous because, had he not given assistance, the defendant would receive a bad reputation and other truck drivers would not help the defendant in the future. Id. at 145. The Bagley court found this karmic claim meritless. Id. at 146.

An act may have a business purpose even though "no pecuniary benefit actually resulted to the defendants." Foley, 185 N.E. at 927. It is enough that "the object of the [act] was pecuniary benefit to the defendants and this fact if found would take the [act] out of the category of gratuitous transactions." Id. For example, in Foley, a car salesman gave a potential buyer a ride home, and the court found a business purpose even though the

sale was merely prospective and not ultimately made. Id. at 926-27. Similarly, the operator of an amusement park ride who gave free rides to children had the business purpose of enticing more paying customers even though he had no guarantee of success. See Beaulieu, 104 N.E.2d at 417-18.

The court below stated without citation that to render an act nongratuitous, the defendant must have "acted for a specific business purpose" that resulted in an "immediate and obvious business benefit." Mass. Asset Financing Corp., 220 F. Supp. 2d at 25 (internal quotation marks omitted). This is not the law in Massachusetts. See Taylor, 107 N.E.2d at 15 ("Although the most obvious benefit to a defendant is one of a direct pecuniary nature, an indirect pecuniary benefit or an undertaking which holds out the hope of a pecuniary benefit may be sufficient to entitle the plaintiff to recover for ordinary negligence."); Beaulieu, 104 N.E.2d at 418 ("[I]t is only necessary for a jury to find some business advantage to the defendant."). We therefore cannot affirm the district court's summary judgment order based on the reasoning presented by the district court.

## III.

Since "we may affirm [a summary judgment] order on any ground revealed by the record," we will now consider Plaintiff's arguments against summary judgment. Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999). Plaintiff

makes three arguments against summary judgment. The first argument is simply that whether MB Valuation and Creel's involvement with the appraisal was gratuitous is a question of fact for the jury to decide. The second argument is that because of the previous business dealings between Plaintiff and MB Valuation, the instant appraisal was "an indispensable part of the bundle of services" between the parties. The third argument is that the parties had a "special relationship" that requires MB Valuation to refrain from ordinary negligence. We need only address Plaintiff's first argument.

In doing so, we first consider whether the relationship between the parties was of a business nature or of a social nature. We cannot but conclude that the parties had a business relationship as MB Valuation had previously completed appraisals for Plaintiff for a fee. The parties have put forth no evidence of anything other than a business relationship between Plaintiff and MB Valuation and Creel. We thus find only a business relationship between the parties.

We now consider whether we can determine as a matter of law that MB Valuation or Creel acted gratuitously by their alleged undertaking of an appraisal without charging a fee. The Massachusetts cases make it clear that whether a party had a business purpose in performing an allegedly gratuitous act is a question of fact for the jury to decide. See Beaulieu, 104 N.E.2d

-10-

at 418 ("[I]t is only necessary for a jury to find some business advantage to the defendant."). Massachusetts courts have found that when businesses give out free services or products, the acts were not gratuitous but rather an effort to entice more customers or create goodwill. See id. (amusement park ride operator giving free rides to children); Foley, 185 N.E. at 926 (car salesman giving a customer a ride home). We see no distinction in this case that would allow us to state as a matter of law that the alleged involvement of MB Valuation and Creel in the appraisal had no business purpose.

In addition, the parties contest the extent of Creel's involvement in the appraisal of American Mold's equipment. Whether MB Valuation or Creel had a business purpose clearly depends on Creel's actual involvement and the extent of that involvement. If Creel merely referred Plaintiff to another company, then a business purpose is less likely, but if Creel supervised and reviewed the appraisal, then a business purpose is more likely. Thus, in order to determine whether MB Valuation or Creel had a business purpose in their involvement with the appraisal, a jury must first determine Creel's involvement and then determine whether there was a business purpose. We thus find a genuine dispute as to a material fact that precludes summary judgment.

**IV.**

We reverse the district court's grant of summary judgment and remand the case for trial.

**<u>Reversed and Remanded</u>**.

**"Concurrence follows"**

**BOUDIN**, <u>**Chief Judge**</u>, **and SELYA**, <u>**Circuit Judge**</u>, **Concurring.** The present facts, taking the version most favorable to MAFCO as the nonmoving party, lie partway between preexisting Massachusetts cases which point in different directions.

In <u>Bagley</u> v. <u>Burkholder</u>, 149 N.E.2d 143 (Mass. 1958), the mis en scene was work related, but the truck driver who moved a truck as a favor to a rival driver acted gratuitously and without any reason to expect future benefits. By contrast, in <u>Beaulieu</u> v. <u>Lincoln Rides, Inc.</u>, 104 N.E.2d 417, 418 (Mass. 1952), the "free rides" were part of the amusement park's business, and the car salesman in <u>Foley</u> v. <u>McDonald</u>, 185 N.E. 926 (Mass. 1933), who drove the plaintiffs home to demonstrate the features of the new car he hoped to sell them, was surely doing so for purposes of selling the car and not as a gesture of kindness.

Our own situation has the look and feel of a business context but without the immediate benefit of enticing visitors into the amusement park or giving a specific sale a push in the right direction, as in the car salesman case. If Creel did as claimed by MAFCO, he probably was building good will for future business, but perhaps also there was a measure of friendly accommodation in his efforts.

This is not an area in which the rationale of the Good Samaritan rule makes it easy to resolve close cases. If MAFCO were concerned solely with whether the negligently performed gesture had

occurred without any payment or promise of remuneration, MAFCO's claim would fail; but <u>Foley</u> and <u>Beaulieu</u> refute so narrow a reading.  They show that Massachusetts aims to protect a truly disinterested Good Samaritan but takes a more skeptical view in a business context when there is some prospect of recompense.  <u>Bagley</u> shows that the benefit cannot be too speculative, but how much is too much is open to debate.

The strongest argument for Creel is Justice Cutter's statement in <u>Bagley</u> that to move from gross negligence to a negligence standard, "more than a conjectural future benefit to the defendant from his gratuitous act of helpfulness must be shown." 149 N.E.2d at 146.  If taken literally, this general statement could doom MAFCO's claim since no evidence exists that Creel had some concrete or immediate hope of gain from any apple-polishing efforts.  But the quoted language goes well beyond the facts of <u>Bagley</u>, where the supposed benefit (through reciprocity) was nearly imaginary.

Against Justice Cutter's generalization must be weighed the emphasis in the Massachusetts cases on the <u>purpose</u> of the supposed gratuitous act.  If Creel had merely offered a recommendation of a substitute appraiser, this would look enough like the kind of referral that he might do for anyone, regardless of the prospect of future business. But crediting (for the moment) MAFCO's further allegations that Creel reviewed the completed

-14-

appraisal and made modifications of his own, the scene is one in which a reasonable jury might conclude that efforts of this kind are not typical of "personal kindheartedness," Bagley, 149 N.E.2d at 145, and that they bespoke an expectation of further custom for Creel that the jury might find adequate.

Arguably, such a close problem of law application ought be left to Massachusetts juries. One would hope for instructions that gave the jury some guidance as to the variables; but community attitudes may have some role in shaping the law in a case like this one. Cf. Dalis v. Buyer Adver., Inc., 636 N.E.2d 212, 214 (Mass. 1994). One further argument for this course is that factual nuances as to the extent of the effort by Creel, and the extent of expectations for future benefit, could have a bearing on the outcome.

The case before us poses what is essentially an open question under Massachusetts law. Apparently, neither party in the district court sought to certify the issue to the Massachusetts courts, and there are no special circumstances (e.g., Pyle v. S. Hadley Sch. Comm., 55 F.3d 20, 22 (1st Cir. 1995)) that would warrant us in insisting on such a reference. Absent certification, existing case law does not appear to justify summary judgment on the current record, although the issue is admittedly close.