TORRUELLA, Circuit Judge.
This case arises from a loan made by Plaintiff Massachusetts Asset Financing Corp. (“Plaintiff’) to American Mold Corporation (“American Mold”). The loan was secured by American Mold’s manufacturing equipment, which had been appraised at $1.1 million dollars, but eventually sold for $30,000 after American Mold defaulted on the loan and went bankrupt. Plaintiff filed suit against American Mold’s lawyers, American Mold’s accountants, and two appraisal companies. This appeal concerns Plaintiffs claim against the appraisal company MB Valuation Services, Inc. (“MB Valuation”). On August 29, 2002, the court below allowed MB Valuation’s motion for summary judgment. Mass. Asset Financing Corp. v. Harter, Secrest & Emery, LLP, 220 F.Supp.2d 20, 25 *61 (D.Mass.2002). On September 30, 2004, the court below entered an order for final judgement pursuant to Federal Rule of Civil Procedure 54(b). For the reasons stated herein, we reverse the decision of the district court and remand the case for trial.
I.
Plaintiff is in the business of making loans. The loans are secured by the borrower’s assets, which are appraised before the loan is made. On numerous occasions, MB Valuation had performed appraisals for Plaintiff. To secure the loan to American Mold, Plaintiff called Scott Creel (“Creel”) at MB Valuation about appraising American Mold’s equipment. The parties disagree as to Creel’s actual involvement after this request. According to Plaintiff, Creel stated that “he could not himself perform the appraisal” but that “he would find another appraiser and would supervise and review that appraiser’s work.”[1] Plaintiff states that Creel then put Plaintiff in touch with an appraiser from another company, Tri-Tech Appraisal Services, and that “Creel reviewed the appraisal as he had promised and increased some specific equipment appraisal amounts and reduced others.” According to MB Valuation, Creel referred Plaintiff to another appraisal company and had no further involvement in the appraisal.
The final appraisal valued American Mold’s equipment at about $1.1. million. MB Valuation and Creel did not receive payment from Plaintiff or any other source for their involvement with this appraisal. Several months after the closing of the loan, American Mold defaulted on the loan and filed for bankruptcy. The equipment, which had been appraised at a value of about $1.1 million, sold for about $30,000.
■ Plaintiff claims damages of about $1.2 million, resulting from professional negligence on the part of MB Valuation. Significantly, Plaintiffs complaint alleged only negligence on the part of MB Valuation and did not allege gross negligence. MB Valuation moved for summary judgment. The court below granted summary judgment because it found that the factual dispute described above was not material to the outcome of the case. The court found that because Plaintiff had never paid MB Valuation for the appraisal — regardless of the dispute over Creel’s involvement — any act by MB Valuation was gratuitous. Under Massachusetts law, liability for a gratuitous act arises only from gross negligence. Thus, since Plaintiff alleged only negligence and not gross negligence, Plaintiff could not recover as a matter of law.
We review a district court’s grant of summary judgment de novo. Tum v. Barber Foods, Inc., 360 F.3d 274, 279 (1st Cir.2004). Since MB Valuation has moved for summary judgment, we construe the record in the light most favorable to Plaintiff. Id.
II.
“A basic principle of negligence law is that ordinarily everyone has a duty to refrain from affirmative acts that unreasonably expose others to a risk of harm.” Tobin v. Norwood Country Club, Inc., 422 Mass. 126, 661 N.E.2d 627, 637 (1996). In contrast, a person generally “does not have a duty to take affirmative action.” Commonwealth v. Levesque, 436 Mass. 443, 766 N.E.2d 50, 56 (2002). For example, “a mere passerby who observes a fire [has no obligation] to alert authorities.” Id. at 57. If, however, a person voluntarily assumes a duty, that duty must be performed with *62 due care. Mullins v. Pine Manor College, 389 Mass. 47, 449 N.E.2d 331, 336 (1983).[2]
For a duty voluntarily undertaken, the standard of due care depends upon the nature of the action. The Supreme Judicial Court (SJC) has noted that “[j]ustice requires that the one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay.” Massaletti v. Fitzroy, 228 Mass. 487, 118 N.E. 168, 177 (1917). A person undertaking a nongratuitous duty, such as one for pay, has a duty to refrain from ordinary negligence. Wheatley v. Peirce, 354 Mass. 573, 238 N.E.2d 858, 860 (1968). In contrast, a person undertaking a gratuitous duty must refrain only from gross negligence. Id. Therefore, in order to determine whether a duty of care has been breached, we must first determine whether the duty was gratuitous or not. In a number of cases, Massachusetts courts have undertaken the task of distinguishing gratuitous and nongratuitous acts. An important factor is whether there was a “social nature in the relations of the parties.” Beaulieu v. Lincoln Rides, Inc., 328 Mass. 427, 104 N.E.2d 417, 418 (1952). A gratuitous act is more likely to occur when an act is of a, social nature rather than a business nature. See id.
The line between gratuitous and nongratuitous acts is relatively clear in the social context. In a social context, when a person does a favor for another person, whether a friend or a stranger, and receives no consideration other than “those intangible advantages arising from mere social intercourse,” Comeau v. Comeau, 285 Mass. 578, 189 N.E. 588, 589 (1934), the act will be gratuitous. For example, in Bagley v. Burkholder, the plaintiff and defendant were both truck drivers for different trucking companies, and plaintiff sued defendant for injuries that occurred while defendant was helping plaintiff move his truck. 337 Mass. 246, 149 N.E.2d 143, 144 (1958). The court found that defendant’s act was gratuitous because the evidence showed no business purpose and “no immediate advantage to the defendant of his helpful action.” Id. at 146. Similarly, in a personal context, when a person offers to give another person a ride without any consideration, the act will be gratuitous.[3] See Ruel v. Langelier, 299 Mass. 240, 12 N.E.2d 735, 736 (1938); Massaletti 118 N.E. at 177; cf. Taylor v. Goldstein, 329 Mass. 161, 107 N.E.2d 14 (1952) (finding the giving of a ride to be a nongratuitous act where" the objective of the ride was to benefit the driver and not the passenger). Finally, when a host receives a guest “as a visitor for social purposes,” the act will be gratuitous. O’Brien v. Shea, 326 Mass. 681, 96 N.E.2d 163, 164 (1951).
In the business context, the line between gratuitous and nongratuitous acts is more difficult to discern. The disposi-tive question is whether the allegedly gratuitous act had a business purpose. See Onofrio v. Dept. of Mental Health, 408 Mass. 605, 562 N.E.2d 1341, 1346 (1990) (“[Defendant] was furthering its own business interests.... ”); Falden v. Crook, 342 Mass. 173, 172 N.E.2d 686, 688 (1961) (“[Defendant] was doing a kind act rather than building up good will for his business.”); Beaulieu v. Lincoln Rides, Inc., 328 Mass. 427, 104 N.E.2d 417, 418 (1952) (“[T]here is nothing in the record to indicate that the defendant, a business corpo *63 ration, undertook to give the plaintiff a pure gratuity.”); Foley v. McDonald, 283 Mass. 96, 185 N.E. 926, 927 (1933) (“[A] business purpose could be found in' the-transportation of the plaintiffs by the defendants in the course of an attempt by the defendants to sell an automobile to the plaintiffs.... ”).
For an act to have a business purpose it need only be “incidental to the [defendant’s] business.” Foley, 185 N.E. at 926-27. For example, when a car salesman drove a prospective buyer home, the court found that the act was incidental to the business purpose of selling automobiles and therefore nongratuitous. Id. at 926-27. In contrast, where an ice cream truck driver gave a customer a ride home, the. act was not incidental to the defendant’s business as the court found that the driver “was doing a kind act rather than building up good will for his business.” Falden, 172 N.E.2d at 688.
For an act to be nongratuitous, ‘ “it is only necessary for a jury to find some business advantage to the defendant.” Beaulieu, 104 N.E.2d at 418. In Beaulieu, the defendant was the operator of an amusement park ride who gave free rides before 2:00 p.m. and charged for rides after 2:00 p.m. Id. at 417-18. The court found that a “jury could find that the purpose of giving free rides ... was merely to interest customers and increase business.” Id. at 418. A “conjectural future benefit,” however, will not establish an otherwise nonexistent business purpose. Bagley, 149 N.E.2d at 146. In Bagley, the plaintiff truck driver argued that the defendant truck driver’s assistance was not gratuitous because, had he not given assistance, the defendant would receive a bad reputation and other truck drivers would not help the defendant in the future. Id. at 145. The Bagley court found this karmic claim meritless. Id. at 146.
An act may have a business purpose even though “no pecuniary benefit actually resulted to the defendants.” Foley, 185 N.E. at 927. It is enough that “the object of the [act] was pecuniary benefit to the defendants and this fact if found would take the [act] out of the category of gratuitous transactions.” Id. For example, in Foley, a car salesman gave a potential buyer a ride home, and the court found a business purpose even though the sale was merely prospective and not ultimately made. Id. at 926-27. Similarly, the operator of an amusement park ride who gave free rides to children had the business purpose of enticing more paying customers even though he had no guarantee of success. See Beaulieu, 104 N.E.2d at 417-18.
The court below stated without citation that to render an act nongratuitous, the defendant must have “acted for a specific business purpose” that resulted in an “immediate and obvious business benefit.” Mass. Asset Financing Corp., 220 F.Supp.2d at 25 (internal quotation marks omitted). This is not the law in Massachusetts. See Taylor, 107 N.E.2d at 15 (“Although the most obvious benefit to a defendant is one of a direct pecuniary nature, an indirect pecuniary benefit or an undertaking which holds out the hope of a pecuniary benefit may be sufficient to entitle the plaintiff to recover for ordinary negligence.”); Beaulieu, 104 N.E.2d at 418 (“[I]t is only necessary for a jury to find some business advantage to the defendant.”). We therefore cannot affirm the district court’s summary judgment order based on the reasoning presented by the district court.
III.
Since “we may affirm [a summary judgment] order on any ground revealed by the record,” we will now consider Plain *64 tiffs arguments against summary judgment. Houlton Citizens’ Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir.1999). Plaintiff makes three arguments against summary judgment. The first argument is simply that whether MB Valuation and Creel’s involvement with the appraisal was gratuitous is a question of fact for the jury to decide. The second argument is that because of the previous business dealings between Plaintiff and, MB Valuation, the instant appraisal was “an indispensable part of the bundle of services” between the parties. The third argument is that the parties had a “special relationship” that requires MB Valuation to refrain from ordinary negligence. We need only address Plaintiffs first argument.
In doing so, we first consider whether the relationship between the parties was of a business nature or of a social nature. We cannot but conclude that the parties had a business relationship as MB Valuation had previously completed appraisals for Plaintiff for a fee. The parties' have put forth no evidence of anything other than a business relationship between Plaintiff and MB Valuation and Creel. We thus find only a business relationship between the parties.
We now consider whether we can determine as a matter of law that MB Valuation or Creel acted gratuitously by their alleged undertaking of an appraisal without charging a fee. The Massachusetts cases make it clear that whether a party had a business purpose in performing an allegedly gratuitous act is a question of fact for the jury to decide. See Beaulieu, 104 N.E.2d at 418 (“[I]t is only necessary for a jury to find some business advantage to the defendant.”). Massachusetts courts have found that when businesses give out free services or products, the acts were not gratuitous but rather an effort to -entice more customers or create goodwill. See id. (amusement park ride operator giving free rides to children); Foley, 185 N.E. at 926 (car salesman giving a customer a ride home). We see no distinction in this case that would allow us to state as a matter of law that the alleged involvement of MB Valuation and Creel in the appraisal had no business purpose.
In addition, the parties contest the extent of Creel’s involvement in the appraisal of American Mold’s equipment. Whether MB Valuation or Creel had a business purpose clearly depends on Creel’s actual involvement and the extent of that involvement. If Creel merely referred Plaintiff to another company, then a business purpose is less likely, but if Creel supervised and reviewed the appraisal, then a business purpose is more likely. Thus, in order to determine whether MB Valuation or Creel had a business purpose in their involvement with the appraisal, a jury must first determine Creel’s involvement and then determine whether there was a business purpose. We thus find a genuine dispute as to a material fact that precludes summary judgment.
IV.
We reverse the district court’s grant of summary judgment and remand the case for trial.

Reversed and Remanded.

. The quoted language is from Plaintiff's brief and is not an actual quotation of Creel.

. There are exceptions, not relevant to this case, to the rule that a person has no duty to take affirmative action. See Mullins, 449 N.E.2d at 336.

. By statute, the standard of care owed by drivers of motor vehicles to their passengers is that of ordinary negligence. Mass. Gen. Laws ch. 231, § 85L.