

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-6-2007

# DeAsencio v. Tyson Foods Inc

Precedential or Non-Precedential: Precedential

Docket No. 06-3502

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"DeAsencio v. Tyson Foods Inc" (2007). *2007 Decisions*. Paper 350.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/350

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-3502

———

MELANIA FELIX DE ASENCIO; MANUEL A. GUTIERREZ;
ASELA RUIZ; EUSEBIA RUIZ; LUIS A. VIGO;
LUZ CORDOVA; HECTOR PANTAJOS, on behalf of
themselves
and all other similarly situated individuals,
<u>Appellants</u>

v.

TYSON FOODS, INC.

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 00-cv-04294)
District Judge: Honorable Robert F. Kelly

———

Argued July 12, 2007

Before: SLOVITER, ALDISERT, and ROTH, <u>Circuit Judges</u>

(Filed September 6, 2007)

———

Thomas J. Elliott
Frederick P. Santarelli (Argued)
Franco A. Corrado
Elliott, Greenleaf & Siedzikowski
Blue Bell, PA l9422

Attorneys for Appellants

Michael J. Mueller (Argued)
Joel M. Cohn
Michael S. McIntosh
Akin, Gump, Strauss, Hauer & Feld
Washington, DC 20036

      Attorneys for Appellee

Howard M. Radzely
      Solicitor of Labor
Steven J. Mandel
      Associate Solicitor
Paul L. Frieden
      Counsel for Appellate Litigation
Joanna Hull (Argued)
U. S. Department of Labor
Washington, DC 20210

      Attorneys for Amicus Curiae Appellants,
      Secretary of Labor

Robin S. Conrad
National Chamber Litigation Center, Inc.
Washington, DC 20062

Thomas J. Walsh, Jr.
Arnold E. Perl
Patrick D. Riederer
Ford & Harrison LLP
Memphis, TN 38120

      Attorneys for Amicus Curiae Appellee,
      Chamber Commerce of the United States

David R. Wylie
D. Christopher Lauderdale
Jackson Lewis LLP
Greenville, SC 29601

      Attorneys for Amicus Curiae Appellee,

National Chicken Council and American Meat Institute


OPINION OF THE COURT


SLOVITER, Circuit Judge.

In instructing the jury in this case brought by poultry workers under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA" or "Act"), the District Court stated that in considering whether the workers' donning, doffing and washing was "work" under the Act, the jury must consider whether the activities involved physical or mental exertion. The jury decided the issue of work against the workers and therefore never reached the defenses proffered by the employer. The workers appeal, arguing that the District Court's instruction on donning and doffing was erroneous as a matter of law.[1] This is an issue that has created considerable interest.[2]

---

[1] The National Chicken Council and the American Meat Institute, as well as the Chamber of Commerce of the United States of America, have submitted briefs as amici curiae in support of Tyson. The Secretary of Labor has submitted a brief as amicus in support of the appellant workers.

[2] See, e.g., Rachael Langston, IBP v. Alvarez: Reconciling the FLSA With the Portal-To-Portal Act, 27 Berkeley J. Emp. & Lab. L. 545 (2006); Lynn M. Carroll, Employment Law – Fair Labor Standards Act Requires Compensation for Employees Walking to and From Workstations – IBP, Inc. v. Alvarez, 40 Suffolk U. L. Rev. 769 (2007); Robert J. Rabin, A Review of the Supreme Court's Labor and Employment Law Decisions: 2005-2006 Term, 22 Lab. Law 115 (Fall 2006); Tresa Baldas, I Have to Put That on? Pay me for the Time!, The National Law Journal, July 2, 2007, at 6; Nicholas D'Ambrosio, When Donning and Doffing Work Gear is Considered Compensable Time, The Business Review, September 8, 2003, http://www.bizjournals.com/albany/stories/2003/09/08/smallb3.html; Michael Matza, Settlement Gives Meat

**I.**

Plaintiffs/Appellants are current and former chicken processing plant workers in New Holland, Pennsylvania, who brought this action against Tyson Foods, Inc. ("Tyson"), arguing that Tyson does not pay them for the time they spend "donning and doffing," as well as washing, their work gear. Tyson requires its employees to put on and take off safety and sanitary clothing (i.e., "donning and doffing"), and engage in washing activities, pursuant to government regulations and corporate or local policy and practice.[3] This time must be spent six times a day: before and after their paid shifts and two daily meal breaks. Most employees generally wear a smock, hairnet, beard net, ear plugs, and safety glasses.[4] Additional sanitary and protective items that certain employees wear include a dust mask, plastic apron, soft plastic sleeves, cotton glove liners, rubber gloves, a metal mesh glove, and rubber boots.

Tyson's witness Michael Good, the complex's manager, testified that these activities take six to ten minutes collectively per shift (presumably per employee). Appellants' expert

---

Workers More Pay, Phila. Inquirer, June 13, 2007, at C01.

[3] Tyson's internal operating requirements provide that a worker may not keep the gear at home and wear it to the plant nor can a worker wear the gear home. See App. at 1402-03, 1798; see also 9 C.F.R. 416.1 et seq. (1996) (requiring that food processing establishments "must be operated and maintained in a manner sufficient to prevent the creation of insanitary conditions and to ensure that product is not adulterated").

[4] At oral argument, Tyson disputed that it necessarily required such gear, but the parties stipulated that the clothing was required in their joint pre-trial memorandum. Tyson notes in its brief that some employees wear less than the typical set of gear, pointing to testimony where a worker wore "just the smock[,]" App. at 876, or where workers did not wear smocks or safety glasses.

estimated that the activities take 13.3 minutes per shift.[5] Although Tyson does not record the time its workers spend on donning and doffing, Tyson avers that certain of the employees receive an extra fifteen minutes of compensation "which is enough to fully compensate the plaintiffs for the very activities that are the basis for this suit." Appellee's Br. at 6. However, Good testified at trial that employees in the "receiving, killing, and picking" and "evisceration" departments do not receive the extra fifteen minutes of compensation.

Appellants filed suit against Tyson on August 22, 2000, under both the FLSA and state law (the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. §§ 260.1-260.45) on behalf of themselves and similarly situated co-workers at Tyson's chicken processing complex, alleging that Tyson was liable to its employees for time spent donning, doffing and washing. See De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 304, 312 (3d Cir. 2003). Appellants sought collective treatment of their FLSA action under the Act's opt-in provisions; 540 workers joined the suit. On interlocutory appeal, this court decided that "the District Court did not exercise sound discretion in granting supplemental jurisdiction over the WPCL action," and denied certification of the WPCL class with respect to all plaintiffs. De Asencio, 342 F.3d at 312.

Tyson subsequently moved for summary judgment, arguing first, that "the acts of donning, doffing, and sanitizing protective clothing and equipment are not work as defined by the FLSA." App. at 2357. Second, Tyson argued that, "if such

---

[5] Although appellants' expert had originally estimated the actions took 15.7 minutes, Tyson's expert excluded certain non-compensable activities, such as swiping of time card and time spent before the donning of gear, and appellants do not disagree. See IBP, Inc. v. Alvarez, 546 U.S. 21, 40-41 (2005) (predonning waiting time, and waiting for supplies, not a principal activity and excluded from coverage under Portal-to-Portal Act of 1947, 29 U.S.C. § 251 et seq.); Anderson v. Mt. Clemens Pottery, 328 U.S. 680, 689 (1946) (ignoring swiping-at-clock time).

activities are work, then they are <u>de minimis</u> and thus should not be compensated."[6] <u>Id.</u> Third, Tyson alleged that the activity, if work, would nevertheless be "not compensable under the Portal to Portal Act." <u>Id.</u> In denying summary judgment on each of these bases, the District Court concluded that it would be "hasty" to rule on the mixed law/fact question of whether the activity was compensable "work" without further development of the record. It observed that there was "minimal relevant case law in our jurisdiction" and "there is significant disagreement among the jurisdictions who have considered these issues." <u>Id.</u> The Court believed "such a decision would be a mistake and a disservice to the body of law on which we depend" and concluded that, in view of the "many disputed factual issues intertwined with the legal issues" on these three points, "summary judgment is not appropriate and would be premature at this time." App. at 2357, 2359.

Trial commenced in this action in June 2006.[7] In their joint pretrial memorandum, the parties identified the legal issues at trial to be "1. Whether the activities and time at issue constitute 'work' for purposes of the FLSA? . . . 2. Whether the time incurred on such activities is de minimis for purposes of the FLSA? 3. Whether the 'opt-ins' [to the class] are similarly situated and have put on representative evidence for purposes of the FLSA?" App. at 2478. To expedite the trial, Tyson withdrew "its position that the clothes-changing and washing activities were not 'integral and indispensible' to the principal

---

[6] The <u>de minimis</u> doctrine is discussed further infra; generally, certain brief moments of work may be deemed difficult to quantify and record and are therefore considered uncompensable.

[7] Appellants also argue that the District Court erred in refusing to postpone the trial to "avoid inherent prejudice from the intense extraordinary public debate and onslaught of negative publicity about immigrant workers in America, which pervaded the national and local media immediately prior to and throughout the time of the June, 2006 trial." Appellants' Br. at 4-5. Because of our disposition of this case, this is a moot issue.

6

activities that the plaintiffs were hired to perform." Id.

During the charging conference, the parties sparred over the definition of "work" that would be read to the jury. Appellants' counsel argued that "[a]ny instruction that equates work with the need for any level of physical or mental exertion directly contradicts the [Supreme Court's] decision in IBP v. Alvarez, where the [C]ourt expressly stated [that] exertion is not, in fact, necessary for an activity to constitute work under the FLSA," and counsel cited to Armour & Co. v. Wantock, 323 U.S. 126 (1944), in support of that proposition. App. at 2035. In response, Tyson's counsel argued that Alvarez does not overrule the Supreme Court's pre-Armour definition of work as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944). They argued that the Armour decision, which held that time on call spent by a private firefighting force could be deemed "work," merely "talks about a situation where an individual is engaged to wait," App. at 2036, and that "[w]e don't have that situation here. Here we have a situation where they're alleging that certain types of physical activities are work, and it's our position that in that context, it's Tennessee Coal . . . [that] should be applied and that's what our instruction tracks, [y]our Honor." App. at 2037. In response, appellants' counsel emphasized that the Supreme Court's Alvarez decision "unanimously, unanimously stated that" the Armour decision "clarif[ied] that exertion is not, in fact, necessary for an activity to constitute work under the FLSA, period. And I don't know how you can get around that." App. at 2037.

The District Court ultimately gave the following work instruction:

> Work is what we're talking about. What –
> does the activity the plaintiffs claim they were
> doing or performing, was it work? To find that an
> employee should be paid for an activity under the
> Fair Labor Standards Act, you first need to

7

determine whether or not the activity at issue is work. The law states that work is any physical or mental exertion, whether burdensome or not, controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and its business . . . .

I said it requires exertion, either physical or mental, but exertion is not, in fact, necessary for all activity to constitute work under the Fair Labor Standards Act[.  T]here – an employer, if he chooses, may hire a worker to do nothing or to do nothing but wait for something to happen.  So that would be an exception of the usual situation where the definition of work requires exertion.

The plaintiffs claim that their donning, doffing, washing and rinsing activities are work. In deciding whether these activities are work under the law, you may consider the following factors. For each job position, if the donning, doffing and washing at issue do not require physical or mental exertion, the activities are not work.  Therefore, you may ask yourself, is the clothing heavy or cumbersome, or is it lightweight and easy to put on or take off?  Does an employee need to concentrate to wash their hands or gloves or put on or take off these clothes?  Can an employee put on or take off their clothes or wash their hands or gloves while walking, talking or doing other things?

App. at 2209-11 (emphasis added).

Following two and one-half hours of deliberation, the jury submitted a written question to the Court: "What is the meaning of exertion in the definition of work? Physical, or should we determine what or how much exertion?"  App. at 3096, 2236. Following argument from the parties, the District Court read the jury the Webster's Dictionary definition of "exertion" and re-read the above jury charge on "work."  App. at 2236-39.

8

Thereafter, the jury returned a unanimous verdict finding plaintiffs had not "provided representative evidence that [the activities at issue] are 'work'" for purposes of the FLSA. App. at 3094-95. As a result, the jury did not reach the questions on the back of the verdict form as to whether the work was de minimis or whether appellants had been paid extra minutes to compensate for such time. Based on the jury's verdict, the District Court entered judgment on behalf of Tyson Foods.

## II.

"Although we generally review jury instructions for abuse of discretion, our review is plenary when the question is whether a district court's instructions misstated the law." United States v. Dobson, 419 F.3d 231, 236 (3d Cir. 2005) (internal citations and quotations omitted). "As on all occasions when we consider jury instructions[,] we consider the totality of the instructions and not a particular sentence or paragraph in isolation." United States v. Coyle, 63 F.3d 1239, 1245 (3d Cir. 1995).

Appellants, and the Secretary of Labor as amicus, argue that although the jury instructions noted that "exertion is not, in fact, necessary" for activity to constitute work under the FLSA, the District Court erred in informing the jury that such exertionless work is an exception to the "usual situation[.]" They assert it was error to inform the jury that "[f]or each job position, if the donning, doffing and washing at issue do not require physical or mental exertion, the activities are not work." App. at 2210. In response, Tyson argues that the "heavy or cumbersome" language in the instruction was appropriate, relying in the main upon Reich v. IBP, Inc., 38 F.3d 1123, 1125-26 (10th Cir. 1994) (holding that "[t]he placement of a pair of safety glasses, a pair of earplugs and a hardhat into or onto the appropriate location on the head takes all of a few seconds and requires little or no concentration," so that these activities did not meet the "physical or mental exertion" requirement and accordingly could not be considered "work" under the FLSA).

The FLSA does not define the term "work." In its opinion in Alvarez issued in 2005, a unanimous Supreme Court

9

provided a concise survey of how its case law has defined the term:

> Our early cases defined [work] broadly. In <u>Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123</u>, 321 U.S. 590 (1944), we held that time spent traveling from iron ore mine portals to underground working areas was compensable; relying on the remedial purposes of the statute and Webster's Dictionary, we described "work or employment" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." The same year, in <u>Armour & Co. v. Wantock</u>, 323 U.S. 126 (1944), we clarified that "exertion" was not in fact necessary for an activity to constitute "work" under the FLSA. We pointed out that "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." Two years later, in <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680 (1946), we defined "the statutory workweek" to "include all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." Accordingly, we held that the time necessarily spent by employees walking from time clocks near the factory entrance gate to their workstations must be treated as part of the workweek.

<u>Alvarez</u>, 546 U.S. at 25-26 (certain internal citations omitted).

The <u>Alvarez</u> Court then discussed how, in response to <u>Anderson</u>, 328 U.S. at 691-92, where the Court held that the term "workweek" in the FLSA included the time employees spent walking from time clocks near a factory entrance to their workstations, Congress passed the Portal-to-Portal Act in order to shield employers from unexpected liability. The Act excluded the activities of "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity

10

or activities[.]" Alvarez, 546 U.S. at 27-28 (quoting 29 U.S.C. § 254). The Alvarez Court explained, however, that "the Portal-to-Portal Act does not purport to change this Court's earlier descriptions of the term[ ] 'work.'" Id. at 28.

The Alvarez decision was a consolidated appeal of Alvarez v. IBP, Inc., 339 F.3d 894 (9th Cir. 2003), and Tum v. Barber Foods, Inc., 360 F.3d 274 (1st Cir. 2004). The Supreme Court held, in response to a question raised in both cases, that the time employees spend walking between changing areas (where they had donned required protective gear) and production areas, and time spent waiting to remove that gear at the end of the work day is compensable under the FLSA, as amended by the Portal-to-Portal Act. The Court further held, in response to a question raised only in Tum, that time spent waiting to receive gear before the work shift begins is not compensable, although it emphasized that its analysis would be different if an employer required its employees to arrive at a certain time and then wait to don the gear.

It is useful to examine the lower court opinions in Tum and Alvarez. In Alvarez, beef and pork slaughter and processing employees brought an FLSA action, arguing that they should be compensated for donning and doffing of their gear (which was, for certain employees, heavier and more elaborate than that at issue in the instant case, including a chain-mail type material for knife-wielding employees). The Court of Appeals for the Ninth Circuit explained the breadth of the definition of "work" under the FLSA, and then explained how the Portal-to-Portal Act and the de minimis doctrine nevertheless operate to narrow the compensability of such work. The Court of Appeals observed, as did the Supreme Court in its consideration of the case, that Tennessee Coal defined work as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." Alvarez, 339 F.3d at 902 (citations and internal quotations omitted) (emphasis added). The Court of Appeals explained:

Definitionally incorporative, [Tennessee Coal]'s

"work" term includes even non-exertional acts. See [Armour] (noting that even "exertion" is not the sine qua non of "work" because "an employer . . . may hire a man to do nothing, or to do nothing but wait for something to happen"). Plaintiffs' donning and doffing, as well as the attendant retrieval and waiting, constitute "work" under [Tennessee Coal's] and Armour's catholic definition: "pursued necessarily and primarily for the benefit of the employer," . . . these tasks are activity, burdensome or not, performed pursuant to IBP's mandate for IBP's benefit as an employer. The activities, therefore, constitute "work."

Id. (certain internal citations omitted).

The Ninth Circuit's opinion observed, however, that the conclusion "[t]hat such activity is 'work' as a threshold matter does not mean without more that the activity is necessarily compensable." Id. It explained how two sources of law in particular may operate to block compensation for such broadly defined "work." The first is the Portal-to-Portal Act, which, the court explained:

relieves an employer of responsibility for compensating employees for "activities which are preliminary or postliminary to [the] principal activity or activities" of a given job. 29 U.S.C. § 254(a) (1999). Not all "preliminary or postliminary" activities can go uncompensated, however. "[A]ctivities performed either before or after the regular work shift," the Supreme Court has noted, are compensable "if those activities are an integral and indispensable part of the principal activities."

Alvarez, 339 F.3d at 902 (quoting Steiner v. Mitchell, 350 U.S. 247, 256 (1956)).

As to the second of the two sources, the Court of Appeals

12

explained that de minimis work is also noncompensable, and cited to Anderson, 328 U.S. at 692 ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours . . . such trifles may be disregarded[, for] [s]plit-second absurdities are not justified by the actualities or working conditions or by the policy of the [FLSA].").

The Alvarez Court of Appeals then agreed with the district court's post-bench-trial conclusions in its findings of fact and conclusions of law as to why certain of the donning and doffing were compensable and others were not. As all the donning/doffing/washing was mandated and necessary to the principal work being performed, the donning and doffing was compensable as an integral and indispensable part of the principal activity pursuant to the Portal-to-Portal Act. Nonetheless, the court concluded that the donning of certain items, such as safety goggles and hardhats, was noncompensable as de minimis. It stated:

> While we do not suggest that the donning of such gear is "trifl[ing]," see [Anderson], 328 U.S. at 692, we do believe that neither FLSA policy nor "the actualities" of plaintiffs' working conditions justify compensation for the time spent performing these tasks. Accordingly, donning and doffing of all protective gear is integral and indispensable . . . and generally compensable. However, the specific tasks of donning and doffing of non-unique protective gear such as hardhats and safety goggles is noncompensable as de minimis . . . In sum, we agree with the district court's conclusion, but for different reasons in part. In this context, "donning and doffing" and "waiting and walking" constitute compensable work activities except for the de minimis time associated with the donning and doffing of non-unique protective gear.

Alvarez, 339 F.3d at 904 (certain internal citations omitted).

On appeal, the Supreme Court, in its Alvarez opinion,

13

referenced its holding in Steiner v. Mitchell, 350 U.S. 247, 254 (1956). In Steiner, the Supreme Court had concluded that in enacting the Portal-to-Portal Act Congress still intended that an employee's activities fall "within the protection of the [Fair Labor Standards] Act if they are an integral part of and are essential to the principal activities of the employees." 350 U.S. at 254. The Steiner Court therefore held "that activities performed either before or after the regular work shift . . . are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed . . . ." Id. at 256. Subsequently, the Supreme Court held in Alvarez, "that any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under § 4(a) of the Portal-to-Portal Act," and is thus compensable under the FLSA. Alvarez, 546 U.S. at 37 (emphasis added); see also Mitchell v. King Packing Co., 350 U.S. 260 (1956) (applying Steiner to hold that workers in a meat packing plant were entitled to compensation for the time spent sharpening their knives, because the knife-sharpening activities were an integral part of, and indispensable to, the principal activities for which the workers were employed).

Accordingly, in Alvarez, the Court noted that the employer "does not challenge the holding below that, in light of Steiner, the donning and doffing of unique protective gear are 'principal activities' under [Section] 4 of the Portal-to-Portal Act" but, rather, challenged whether post-donning/pre-doffing walking time was compensable under the Portal-to-Portal Act. Alvarez, 546 U.S. at 32. The Court concluded that such walking time after donning is compensable because the donning was an unchallenged principal activity and therefore it triggered the start of the workday.[8] In other words, donning "gear that is 'integral

---

[8] In Alvarez, the Court noted that "[T]he Department of Labor has adopted the continuous workday rule, which means that the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.' [29 C.F.R.] § 790.6(b).

14

and indispensable' to employees' work is a 'principal activity' under the statute," and, thus, "during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [the Portal-to-Portal Act's exclusion of walking time], and as a result is covered by the FLSA." Alvarez, 546 U.S. at 37, 40.

The Supreme Court next turned to the decision in Tum v. Barber Foods, Inc., 360 F.3d 274 (1st Cir. 2004). In that case, the Court of Appeals had agreed that "[i]n the context of this case, Employees are required by [employer] Barber Foods and or government regulation to wear the gear. Therefore, [donning and doffing] are integral to the principal activity and therefore compensable." Id. at 279.[9] However, the Court of Appeals had held that the pre-donning waiting time, post-donning walking time, pre-doffing waiting time and pre-doffing walking time were all excluded from FLSA coverage by the Portal-to-Portal Act. The Supreme Court disagreed with almost all of these holdings. The Court held that the Court of Appeals was incorrect with regard to its treatment of post-donning walking time, and pre-doffing waiting and walking time. It stated, "[b]ecause doffing gear that is 'integral and indispensable' to employees' work is a 'principal activity' under the statute, the continuous workday rule mandates that time spent waiting to doff is not affected by the Portal-to-Portal Act and is instead covered by the FLSA." Alvarez, 546 U.S. at 40. Moreover, it

These regulations have remained in effect since 1947, see 12 Fed. Reg. 7658 (1947), and no party disputes the validity of the continuous workday rule." Alvarez, 546 U.S. at 29.

[9] The district court in Tum ruled in a pretrial motion that donning/doffing was integral to plaintiffs' employment at the chicken processor in question, thus removing it from exclusion under the Portal-to-Portal Act, and this, as noted, was affirmed on appeal to the First Circuit. The jury in Tum, however, had "concluded that such time was de minimis and therefore not compensable" and so, nevertheless, ruled for Barber on the question of compensation for this work. Alvarez, 546 U.S. at 39.

15

also stated that the Court of Appeals was incorrect in concluding that the "walking time was a species of preliminary and postliminary activity excluded from FLSA coverage . . . ." Id. at 39.

The Supreme Court only affirmed the Court of Appeals' conclusion, that pre-donning waiting time was not a "principal activity." It explained that the Portal-to-Portal Act mandated that such preshift activities are uncompensable: "unlike the donning of certain types of protective gear, which is always essential if the worker is to do his job, the waiting may or may not be necessary in particular situations or for every employee. It is certainly not 'integral and indispensable' in the same sense that the donning is. It does, however, always comfortably qualify as a 'preliminary' activity." Id. at 40. The Court observed, however, that such a conclusion would be different if "Barber required its employees to arrive at a particular time in order to begin waiting." Id. at 40 n.8.

In light of the foregoing, we conclude that Alvarez not only reiterated the broad definition of work, but its treatment of walking and waiting time under the Portal-to-Portal Act necessarily precludes the consideration of cumbersomeness or difficulty on the question of whether activities are "work." Activity must be "work" to qualify for coverage under the FLSA, and that "work," if preliminary or postliminary, will still be compensable under the Portal-to-Portal Act if it is "integral and indispensable" to the principal activity. Under Alvarez, such activities are, in themselves, principal activities. Although we recognize, of course, that whether donning and doffing is work was not directly at issue in Alvarez,[10] the Court could not have concluded that walking and waiting time are compensable under the Portal-to-Portal Act if they were not work themselves.

Tyson relies upon Reich v. IBP, Inc., 38 F.3d 1123, 1127

_____

[10] The Supreme Court observed that Alvarez's employer did not challenge that the donning and donning of unique gear are principal activities. Alvarez, 546 U.S. at 32.

16

(10th Cir. 1994), a pre-Alvarez case, in support of the District Court's use of the "cumbersome" language in the jury charge. In Reich, the Court of Appeals for the Tenth Circuit held that the donning and doffing of standard, non-unique protective material, such as hard hats, earplugs, safety footwear, and safety eyewear, was not "work" in light of Tennessee Coal and its progeny. 38 F.3d at 1125. Of some importance, the Reich court acknowledged that it "could also be said that the time spent putting on and taking off these items is de minimis as a matter of law, although it is more properly considered not work at all. Requiring employees to show up at their workstations with such standard equipment is no different from having a baseball player show up in uniform, a businessperson with a suit and tie, or a judge with a robe. It is simply a prerequisite for the job, and is purely preliminary in nature." Id. at 1126 n.1.

Following issuance of the Alvarez decision, at least one district court in the Tenth Circuit has considered and rejected the continued viability of Reich. In Garcia v. Tyson Foods, Inc., 474 F. Supp. 2d 1240 (D. Kan. 2007), the court stated that it was

> convinced that the Circuit, if given the opportunity to revisit the issues in Reich, would approach its analysis of the pertinent issues differently in light of Alvarez, regardless of whether the Circuit ultimately reached the same conclusions concerning compensability. Significantly, the Circuit did not analyze the issues through the lens of the continuous workday rule as clarified by the Supreme Court in Alvarez. In light of Alvarez, it would seem that the Circuit, if revisiting Reich today, would focus not on whether the donning and doffing constituted 'work' within the meaning of Tennessee Coal, but on whether standard protective clothing and gear are 'integral and indispensable' to the work performed by production employees. Indeed, the Circuit in Reich, although in dicta, certainly stated that standard clothing and gear are integral and indispensable to the work performed by production

17

employees, suggesting that the Circuit might reach a different conclusion on compensability if analyzed in the context of Alvarez.

Id. at 1246.

The Garcia court rejected the argument that the Tenth Circuit's post-Reich opinion in Smith v. Aztec Well Servicing Co., 462 F.3d 1274 (10th Cir. 2006), was indicative of the continuing vitality of Reich after Alvarez. It noted that "the Circuit's ultimate holding in Smith – that travel time was not compensable – was based on its conclusions that the plaintiffs' travel time was not integral and indispensable to the plaintiffs' principal activities and that the plaintiffs' travel time did not otherwise fall within the continuous workday. This analysis, a markedly different one than the Reich analysis, is in accord with Alvarez and further suggests that the Circuit, if revisiting Reich, would approach that case differently." Garcia, 474 F. Supp. 2d at 1247 (certain internal citations omitted). Unlike the District Court in Garcia, we will not speculate about what another Court of Appeals would do if it reconsidered the issue in light of Alvarez.

We conclude instead that the better view is that stated in Ballaris v. Wacker Siltronic Corp., 370 F.3d 901 (9th Cir. 2004), which rejected Reich and reaffirmed the analysis the Ninth Circuit had previously set forth in its opinion in Alvarez, which was affirmed by the Supreme Court. The Ballaris court noted that, generally, preliminary and postliminary activities remain compensable so long as those activities are an integral and indispensable part of the principal activities. It observed that 29 C.F.R. § 790.8(c) "provides: 'Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity.' . . . Further, 'where the changing of clothes on the employer's premises is required by law, by rules of the

18

employer, or by the nature of the work,' the activity may be considered integral and indispensable to the principal activities." Ballaris, 370 F.3d 901, 910 (quoting 29 C.F.R. § 790.8(c)) (emphasis added by Ballaris court).

In Ballaris, plaintiffs were silicon wafer manufacturing workers who were required to "gown," i.e., don "bunny suits," and certain of whom were also obligated to don plant uniforms underneath the suits as well. The Ballaris court, relying on its decision in Alvarez, explained that the exertion of the changing activities was not at issue in deciding whether they were "work" or not: "In Alvarez, we held that donning and doffing of all protective gear was compensable worktime. We further held that, in considering whether putting on and taking off safety goggles was excluded, the ease of donning and ubiquity of use did not make the donning of such equipment any less integral and indispensable. We clarified that the term 'work,' as used in the FLSA, includes even non-exertional acts. We also made it clear that the donning and doffing of various types of safety gear, as well as the attendant retrieval and waiting, constituted 'work.'" Ballaris, 370 F.3d at 910-11 (internal quotations and citations omitted) (emphasis added).

The Ballaris court then explained that the fact that the employer required, and strictly enforced, its policy that employees don the attire, and, furthermore, that "this activity was performed at both broad and basic levels for the benefit of the company," led to the conclusion that the activity was not precluded by the Portal-to-Portal Act as merely preliminary. Id. (internal quotations to panel decision in Alvarez omitted) (citing Dunlop v. City Electric, Inc., 527 F.2d 394, 399-401 (5th Cir.1976) (suggesting that the employer's directive to perform an action weighs in favor of compensability)). The Ballaris decision thus supports a much broader definition of "work" in the first instance, and notes that such "work" may nevertheless be deemed uncompensable under the Portal-to-Portal Act if it is

not integral and indispensible to a given job.[11]

In light of the broad remedial purpose of the FLSA, see, e.g., Brock v. Richardson, 812 F.2d 121, 123 (3d Cir. 1987) ("The Fair Labor Standards Act is part of the large body of humanitarian and remedial legislation enacted during the Great Depression, and has been liberally interpreted."), we conclude that it was error for the jury instruction to direct the jury to consider whether the gear was cumbersome, heavy, or required concentration to don and doff. This language in effect impermissibly directed the jury to consider whether the poultry workers had demonstrated some sufficiently laborious degree of exertion, rather than some form of activity controlled or required by the employer and pursued for the benefit of the employer; Armour demonstrates that exertion is not in fact, required for

_____

[11] The Secretary of Labor also highlights an interesting provision of the FLSA, 29 U.S.C. § 203(o), which provides, under the heading of "Hours Worked," that "[i]n determining . . . the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee." Of course, no such collective-bargaining agreement is at issue in this case, but the very existence of this carve-out for changing time under the heading "Hours Worked" in the statute provides at least some indication that such activity is itself properly considered "work" under the FLSA. See Turner v. City of Philadelphia, 262 F.3d 222, 224 and 224 n.1 (3d Cir. 2001) (examining § 203(o) and noting that "[w]e assume arguendo, as plaintiffs would have us do, that clothes and uniform change time would ordinarily be included within hours worked. . . Defendants do not dispute this point."). No mention of the "cumbersome" or "heavy" nature of the changing or washing may be found in the statute. See Steiner, 350 U.S. at 255 (observing that the "clear implication" of the statute is that changing and washing is a principal activity unless otherwise excluded from coverage by statute).

20

activity to constitute "work."

## III.

In light of the foregoing analysis, the undisputed facts established that the donning and doffing activity in this case constitutes "work" as a matter of law. Because the jury was erroneously instructed on the definition of "work," we will remand to the District Court for further proceedings consistent with the above analysis.[12] Although preliminary or postliminary work is non-compensable under the Portal-to-Portal Act if the work is not "'integral and indispensable' to [the] 'principal activit[ies]'" of a given job, Alvarez, 546 U.S. at 37, we note that Tyson explicitly withdrew any defense that, if work, donning or doffing was not integral or indispensable in the joint pre-trial memorandum. We leave it to the District Court to determine the preclusive effect, if any, of this withdrawal in any further proceedings.

On remand, the District Court will also need to consider the de minimis doctrine, which provides a limiting principle to compensation for trivial calculable quantities of work. Tyson argues that any guidance we may give as to the content of the doctrine would be merely advisory; we disagree. See Douglas, 50 F.3d at 1228 ("In light of our decision to remand for a new trial, it is not necessary to address the issue of the jury

---

[12] Appellants also challenged the continuous workday instruction given at trial. The continuous workday is generally defined as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." Alvarez, 546 U.S. at 29 (internal quotations and citations omitted). We believe a correct definition of work would alleviate any concerns that appellants would have on this point were there to be a second trial; in any event, the District Court properly instructed the jury on the continuous workday rule, and "[n]o litigant has a right to a jury instruction of its choice, or precisely in the manner and words of its own preference." Douglas v. Owens, 50 F.3d 1226, 1233 (3d Cir. 1995).

21

instruction regarding the law governing the use of force against prisoners. Nonetheless, because of the likelihood that this issue will undoubtedly arise again during the new trial, we will give directions on the issue to the district court."); Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc., 750 F.2d 1552, 1566 (Fed. Cir. 1984) ("Trans-World raises both of those issues in its appeal. Nyman's first response is that we should not consider those issues, on the ground that since the jury did not reach the question of damages because it concluded that both patents were invalid, Trans-World is seeking an advisory opinion on an issue that neither the jury nor the district court decided. Those issues, however, undoubtedly will arise on the retrial of the question of damages that will be held.").

We therefore proceed to provide some comments on the de minimis doctrine. In Anderson, the Court explained that "[t]he workweek contemplated . . . must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." Anderson, 328 U.S. at 692.

The Court of Appeals for the Ninth Circuit has held that, "in determining whether otherwise compensable time is de minimis, we will consider (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." Lindow v. United States, 738 F.2d 1057, 1063 (9th Cir. 1984) (holding that time difficult to calculate, small in the aggregate, and irregularly performed is de minimis). The regulation appearing in 29 C.F.R. § 785.47 notes that:

> In recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot

22

as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are de minimis. (Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946))[.] This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him.

Appellants argue that the de minimis charge that the District Court gave only instructed the jury to consider whether the donning/doffing activities were de minimis, and not whether that time, when aggregated with post-donning/pre-doffing walking time, was de minimis. App. at 2212-15. We agree that this is an issue that should be reconsidered on remand. See Lindow, 738 F.2d at 1063 ("[W]e will consider the size of the aggregate claim. Courts have granted relief for claims that might have been minimal on a daily basis but, when aggregated, amounted to a substantial claim."); Reich v. New York City Transit Authority, 45 F.3d 646, 652 (2d Cir. 1995) (same).

Finally, appellants assert that the District Court should not have charged the jury that so-called "additional" or "extra" minutes, which Tyson claimed it gave certain workers some of the time as non-"work" compensation, was a defense under the FLSA for the uncompensated time. They argue in particular that the damages and liability portions of the trial were bifurcated, and the issue of payment was to be addressed at a later phase of the proceedings. We agree. It is clear that all of the workers in the class were not so compensated. To the extent this issue may arise again on remand, we believe that questions regarding such payments are more appropriately resolved at the damages stage.

23

**IV.**

For the foregoing reasons, we will reverse and remand this matter to the District Court for further proceedings consistent with this opinion.